# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAY SCOTT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JAMES BRIGGS, D.D.S.,<br><br>　　　　Defendant. | Case No. 1:13-cv-01900 DLB PC<br><br>ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND<br><br>THIRTY-DAY DEADLINE |

Plaintiff Aaron Ray Scott ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on November 22, 2013.[1] He names James Briggs, D.D.S., as Defendant.

**A.     SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid,

---
[1] Plaintiff consented to the jurisdiction of the United States Magistrate on December 6, 2013.

the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 555). While factual allegations are accepted as true, legal conclusions are not. Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983. Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934. Plaintiff must present factual allegations sufficient to state a plausible claim for relief. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The mere possibility of misconduct falls short of meeting this plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.     SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Corcoran State Prison where the events giving rise to this action took place.

Plaintiff alleges the following. On or about January 1, 2009, Plaintiff noticed a small lump growing on the left inside of his lower lip. As months passed, the lump continued to grow and began interfering with daily activities such as eating, drinking, brushing teeth, talking and exercising due to frequent biting down on the lump which would cause excruciating pain.

In January of 2010, Plaintiff, fearing the lump may be cancerous, began submitting CDC-7362 Health Care Services Request forms to have it examined. Each visit to the clinic resulted in unfulfilled promises of treatment. On February 11, 2011, Plaintiff was seen by U.C. Davis Telemedicine Service Dr. P. Haines Ely. Dr. Ely examined and diagnosed the lump as a cystic mass that has a mucocele. Dr. Ely recommended two options for treatment, one that could be performed in his office and another that is more easily performed in the prison health system. Dr. Ely's recommendation was faxed to Dr. Edgar Clark at Corcoran Medical Clinic on February 11, 2011.

On March 22, 2011, Plaintiff was seen at the Corcoran Medical Clinic for a follow-up consultation. Plaintiff was informed that Dr. Ely had recommended an electrodesiccation treatment plan that was not available at Corcoran Medical Clinic. Therefore, the doctor informed Plaintiff that he was approving the treatment to be done by an outside dermatologist which required Plaintiff to be placed on an outpatient waiting list.

On July 12, 2011, Plaintiff went to the Corcoran Dental Clinic and was seen by Dr. Kim Uy. Dr. Uy reviewed Plaintiff's medical history concerning the lump along with the recommendations of Dr. Ely and Plaintiff's placement on the outpatient waiting list. Dr. Uy ordered a biopsy to assure the lump was not cancerous.

On or about August 1, 2011, Plaintiff went back to the Dental Clinic and was seen by Defendant James Briggs, D.D.S. Dr. Briggs stated he had summoned Plaintiff to see what he could do about the growth on Plaintiff's lip. Plaintiff gave Dr. Briggs a full history of the lump along with the diagnosis and recommended treatment of Dr. Ely. He also advised Dr. Briggs that he had been placed on a long outpatient waiting list, and that Dr. Uy had ordered a biopsy. Dr. Briggs stated he had seen this kind of lump before and knew how to get rid of it with a simple surgery. Plaintiff asked Dr. Briggs if he could check his medical records because Dr. Ely said something about an electric shock treatment that was not available at Corcoran Medical Clinic. Dr. Briggs advised Plaintiff that he knew how to get rid of the lump and he wasn't going to look at any file. Dr. Briggs did not numb the lip area but then proceeded to pierce the lump and suction out all the liquid and blood. Plaintiff states the pain was excruciating. Dr. Briggs then applied pressure to stop the bleeding which also caused pain. When he was finished, he held up a mirror and said, "Done, finish,

3

I told you I could do it." Plaintiff states the lump was gone. He was then escorted back to his cell.

When he entered his cell he asked his cellmate if the lump was gone. His cellmate, James Cole, stated no, that it was still there and looks like it has gotten bigger. Plaintiff looked in the mirror and saw that the lump had gotten bigger. He immediately filled out a health care request form to be seen again by Dr. Briggs.

On August 22, 2011, Plaintiff was seen again by Dr. Briggs. Dr. Briggs saw that the lump had returned and stated that he knew this could happen and he could treat it another way. Dr. Briggs explained the treatment plan would be to cut open the lip and remove the whole lump intact. Plaintiff asked if Dr. Briggs had reviewed his medical file to see the diagnosis and recommended treatment plan of Dr. Ely. Dr. Briggs stated he didn't want to hear it because he knew what he was doing and he was going to do it his way. Plaintiff then allowed Dr. Briggs to perform the surgery. Dr. Briggs numbed the lip and proceeded to open it. Upon viewing the mass, Dr. Briggs stated, "Wow, I didn't know it was going to have this many tendons wrapped around it. Now I'm going to have to be real careful in cutting away all the tendons to remove the sack without bursting it." As Dr. Briggs was cutting and tearing at his lip, Plaintiff states he felt intense and excruciating pain. Halfway through the procedure, Dr. Briggs stated, "Oops I just burst it." Dr. Briggs got angry and blamed it on the tendons surrounding the mass and stated that he would just cut off the part he had gotten free from the tendons and send it out for biopsy examination. Dr. Briggs put three stitches in Plaintiff's lip and sent him back to his cell. As he approached his cell Plaintiff could feel something running down his lip and chin. He asked the officers what it was and they said it was blood. As soon as he got to his cell, his cellmate stated that Plaintiff was bleeding and the lump was still there. As the lump was growing back, it was causing the stitches to tear through his skin which caused Plaintiff to bleed. Plaintiff asked the escorting officers to inform Dr. Briggs of what they had seen.

Approximately two hours later, Plaintiff was returned to the Dental Clinic. Dr. Briggs saw Plaintiff and stated, "This little rascal really wants to be persistent." Dr. Briggs stated he would have to renumb the lip, restitch the stiches that were pulling out, and add another for reinforcement. When he completed the procedure, he advised Plaintiff that he would have to wait for the biopsy report to figure out another plan of treatment. At that point, Plaintiff decided he was not going to

4

return to Dr. Briggs.

Plaintiff returned to his cell and remained in excruciating pain. He states he could not get out of bed, eat, drink or talk the entire day and night, and he could not sleep through the entire night. When he awoke the next morning, he found blood on his pillow and discovered that his stitching had come through the skin again. Also, the lump had returned. Plaintiff stayed in his cell for approximately five days due to pain, and didn't fully return to his daily activities for ten days.

On September 28, 2011, Plaintiff went to the Corcoran Medical Clinic and was seen by Dr. Bondoc. Dr. Bondoc apologized for the delay in getting Dr. Ely's recommended treatment. Dr. Bondoc stated that the delay was caused by the former doctor improperly filling out the request form. She stated the form was largely unreadable, and the former doctor was no longer employed at Corcoran. Therefore, she would rewrite and resubmit the request. Plaintiff then explained to Dr. Bondoc what had occurred under Dr. Uy's and Dr. Briggs' care. Dr. Bondoc stated Plaintiff had to be lying. Dr. Bondoc came around her desk and looked at the lump closer. She said, "No, you're right. Why did he do this?" Dr. Bondoc went on to say that Dr. Briggs was not authorized to do such a surgery at Corcoran and that the surgery was not an authorized dental procedure at Corcoran, but one that's assigned to the medical staff only. Dr. Bondoc apologized for what had occurred and promised to have it immediately fixed by approving the electrodessication treatment.

On November 9, 2011, Plaintiff was transported to the clinic of Dr. Susan Luu. Dr. Luu examined Plaintiff and stated, "Who butchered your lip like this, didn't they get this fax by Dr. Ely from U.C. Davis?" Plaintiff advised Dr. Luu what had occurred and Dr. Luu stated that had Dr. Briggs followed Dr. Ely's recommended treatment plan, the lump would be gone and Plaintiff would not have had to suffer so much pain. Dr. Luu explained that she would then perform the procedure recommended by Dr. Ely. She successfully performed the procedure and removed the lump. As of November 14, 2013, the lump had not grown back, but Plaintiff's lip is severely scarred and he has numbness on that side of his lower lip. Due to the numbness, he often bites down on that side of the lip, causing him great pain. Plaintiff asked doctors about the numbness and frequent biting and was informed that it was due to the surgeries and he may or may not regain complete feeling to that portion of his lip.

Plaintiff seeks compensatory damages in the amount of fifty thousand dollars ($50,000), and punitive damages in the amount of fifty thousand dollars ($50,000) from Defendant Briggs for Plaintiff's pain and suffering.

## C. DISCUSSION

### Medical Treatment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680

6

F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Plaintiff's allegations do not demonstrate that Defendant Briggs acted with the requisite state of mind.  Plaintiff does not deny that he sought and received medical care from Defendant Briggs.  Plaintiff claims Defendant Briggs should have followed the treatment plan recommended by Dr. Ely.  However, "[a] difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds*, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).  The medical treatment Plaintiff received from Defendant Briggs proved unsuccessful and caused Plaintiff pain, but at most, Plaintiff's allegations amount to negligence.  An Eighth Amendment claim may not be premised on an ordinary lack of due care, or even gross negligence, by a physician.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff has therefore failed to state a deliberate indifference claim against Defendant Briggs.

### D. CONCLUSION AND ORDER

Plaintiff's complaint fails to state a claim upon which relief may be granted under section 1983.  The Court will provide Plaintiff with an opportunity to file an amended complaint.  Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named Defendant did that led to the deprivation of Plaintiff's federal rights and liability may not be imposed on supervisory personnel under the theory of mere *respondeat superior*, Iqbal, 556 U.S. at 676-77; Starr v. Baca, 652 F.3d 1202, 1205-07 (9th Cir. 2011), *cert. denied*, 132 S.Ct. 2101 (2012).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . ."  Twombly, 550 U.S. at 555 (citations omitted).

Finally, an amended complaint supercedes the original complaint, Lacey v. Maricopa County, 693 F.3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's complaint is dismissed, with leave to amend, for failure to state a claim under section 1983;

2. The Clerk's Office shall send Plaintiff a civil rights complaint form;

3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file an amended complaint; and

4. If Plaintiff fails to file an amended complaint in compliance with this order, this action will be dismissed, with prejudice, for failure to state a claim.

IT IS SO ORDERED.

Dated:   **October 17, 2014**                    /s/ Dennis L. Beck
                                        UNITED STATES MAGISTRATE JUDGE