# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AARON RAY SCOTT,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES BRIGGS, D.D.S.,<br><br>    Defendant. | Case No. 1:13-cv-01900 DLB PC<br><br>ORDER DISMISSING COMPLAINT WITHOUT LEAVE TO AMEND<br><br>ORDER DIRECTING CLERK OF COURT TO CLOSE CASE |

Plaintiff Aaron Ray Scott ("Plaintiff") is a California state prisoner proceeding pro se and in forma pauperis in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on November 22, 2013.[1] He names James Briggs, D.D.S., as Defendant. On October 20, 2014, the Court screened the complaint and determined that it failed to state a claim. Plaintiff was granted leave to file an amended complaint. On January 20, 2015, Plaintiff filed a First Amended Complaint which is presently before this Court for screening.

**A.   SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

---

[1] Plaintiff consented to the jurisdiction of the United States Magistrate on December 6, 2013.

1

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  Id.

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  Plaintiff's allegations must link the actions or omissions of each named defendant to a violation of his rights; there is no respondeat superior liability under section 1983.  Iqbal, 556 U.S. at 676-77; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiff must present factual allegations sufficient to state a plausible claim for relief.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**B.    SUMMARY OF PLAINTIFF'S ALLEGATIONS**

Plaintiff is currently incarcerated at Corcoran State Prison where the events giving rise to this action took place.

Plaintiff alleges the following.  On or about January 1, 2008, Plaintiff noticed a small lump growing on the left inside of his lower lip.  As months passed, the lump continued to grow and began

2

interfering with daily activities such as eating, drinking, brushing teeth, talking and exercising due to frequent biting down on the lump which would cause excruciating pain. On May 5, 2008, Plaintiff submitted a CDCR 7362 health care form.

Approximately three years later, on February 11, 2011, Plaintiff was seen by U.C. Davis Telemedicine Service Dr. P. Haines Ely. Dr. Ely examined and diagnosed the lump as a cystic mass that has a mucocele. Dr. Ely recommended two options for treatment. The first option could be performed in his office and involved a gentle electrodessication by numbing the lip and inserting an epilating needle into the mucocele and then using electric current to kill the mucocele and allow a hole for drainage. The second option could more easily be performed in the prison health system and involved shaving the mucocele off and gently electrodessicating the base. Dr. Ely expressed how obvious the lump was and the necessity for surgical removal due to Plaintiff frequently biting down on it. Dr. Ely's recommendation was faxed to Dr. Edgar Clark at Corcoran Medical Clinic on February 11, 2011.

On March 22, 2011, Plaintiff was seen at the Corcoran Medical Clinic for a follow-up consultation. Plaintiff was informed that Dr. Ely had recommended an electrodesiccation treatment plan that was not available at Corcoran Medical Clinic. Therefore, the doctor informed Plaintiff that he was approving the treatment to be done by an outside dermatologist which required Plaintiff to be placed on an outpatient waiting list.

On July 12, 2011, Plaintiff went to the Corcoran Dental Clinic and was seen by Dr. Kim Uy for issues unrelated to the lump. Dr. Uy reviewed Plaintiff's medical history and noticed the lump on Plaintiff's lip. Plaintiff explained the medical history concerning the lump along with the diagnosis and recommendations of Dr. Ely and Plaintiff's placement on the outpatient waiting list. Dr. Uy ordered a biopsy to assure the lump was not cancerous.

On or about August 1, 2011, Plaintiff went back to the Dental Clinic and was seen by Defendant James Briggs, D.D.S. Dr. Briggs stated he had summoned Plaintiff to see what he could do about the growth on Plaintiff's lip. Plaintiff gave Dr. Briggs a full history of the lump along with the diagnosis and recommended treatment of Dr. Ely. He also advised Dr. Briggs that he had been placed on a long outpatient waiting list, and that Dr. Uy had ordered a biopsy. Dr. Briggs stated he

3

would cure the lump on Plaintiff's lip.  Dr. Briggs did not numb the lip area but then proceeded to pierce the lump and suction out all the liquid and blood.  Plaintiff states the pain was excruciating.  Dr. Briggs then applied pressure to stop the bleeding which also caused pain.  When he was finished, he held up a mirror and said, "Done, finished, I told you I could do it."  Plaintiff could see that the lump appeared to be gone.  He was then escorted back to his cell.

When he entered his cell he asked his cellmate, James Cole, if the lump was gone.  Cole stated, "No, it's still there and it looks like it has gotten bigger."  Plaintiff looked in the mirror and could clearly see the lump had grown back bigger.  Because the mass had grown back and was causing pain, Plaintiff immediately filled out a health care request form to be seen again by Dr. Briggs.

On August 22, 2011, Plaintiff was seen again by Dr. Briggs.  Dr. Briggs saw that the lump had returned and stated that he knew this could happen and he could treat it another way.  Dr. Briggs explained the treatment plan would be to cut open the lip and remove the whole lump intact.  Plaintiff asked if Dr. Briggs had reviewed his medical file to see the diagnosis and recommended treatment plan of Dr. Ely.  Dr. Briggs stated he didn't want to hear it because he knew what he was doing and he was going to do it his way.  Plaintiff then allowed Dr. Briggs to perform the surgery.  Dr. Briggs numbed the lip and proceeded to open it.  Upon viewing the mass, Dr. Briggs stated, "Wow, I didn't know it was going to have this many tendons wrapped around it. Now I'm going to have to be real careful in cutting away all the tendons to remove the sack without bursting it."  As Dr. Briggs was cutting and tearing at his lip, Plaintiff states he felt intense and excruciating pain.  Halfway through the procedure, Dr. Briggs stated, "Oops I just burst it."  Dr. Briggs got angry and blamed it on the tendons surrounding the mass and stated that he would just cut off the part he had gotten free from the tendons and send it out for biopsy examination.  Dr. Briggs put three stitches in Plaintiff's lip and sent him back to his cell.  As he approached his cell Plaintiff could feel something running down his lip and chin.  He asked the officers what it was and they said it was blood.  As soon as he got to his cell, his cellmate stated that Plaintiff was bleeding and the lump was still there.  As the lump was growing back, it was causing the stitches to tear through his skin which caused Plaintiff to bleed.  Plaintiff asked the escorting officers to inform Dr. Briggs of what they had seen.

4

Approximately two hours later, Plaintiff was returned to the Dental Clinic. Dr. Briggs saw Plaintiff and stated, "This little rascal really wants to be persistent." Dr. Briggs stated he would have to renumb the lip, restitch the stiches that were pulling out, and add another for reinforcement. When he completed the procedure, he advised Plaintiff that he would have to wait for the biopsy report to figure out another plan of treatment. At that point, Plaintiff decided he was not going to return to Dr. Briggs.

Plaintiff returned to his cell and remained in excruciating pain. He states he could not get out of bed, eat, drink or talk the entire day and night, and he could not sleep through the entire night. When he awoke the next morning, he found blood on his pillow and discovered that his stitching had come through the skin again. Also, the lump had returned bigger than before. Plaintiff stayed in his cell for approximately five days due to pain, and didn't fully return to his daily activities for ten days. It was very difficult for Plaintiff to avoid the growing lump when doing activities such as eating and drinking.

On September 28, 2011, Plaintiff went to the Corcoran Medical Clinic and was seen by Dr. Bondoc. Dr. Bondoc apologized for the delay in getting Dr. Ely's recommended treatment. Dr. Bondoc stated that the delay was caused by the former doctor improperly filling out the request form. She stated the form was largely unreadable and the request for service had circled both approved and denied on the form which caused confusion. She stated the former doctor was no longer employed at Corcoran. Therefore, she would rewrite and resubmit the request. Plaintiff then explained to Dr. Bondoc what had occurred under Dr. Uy's and Dr. Briggs' care. Dr. Bondoc stated Plaintiff had to be lying. Dr. Bondoc came around her desk and looked at the lump closer. She said, "No, you're right. Why did he do this? He messed it up because it's still there." Dr. Bondoc went on to say that Dr. Briggs was not authorized to do such a surgery at Corcoran and that the surgery was not an authorized procedure at Corcoran. Dr. Bondoc apologized for what had occurred and promised to have it immediately fixed by approving the electrodessication treatment.

On November 9, 2011, Plaintiff was transported to the clinic of Dr. Susan Luu. Dr. Luu examined Plaintiff and stated, "Who butchered your lip like this, didn't they get this fax by Dr. Ely from U.C. Davis?" Plaintiff advised Dr. Luu what had occurred and Dr. Luu stated that had Dr.

5

Briggs followed Dr. Ely's recommended treatment plan, the lump would be gone and Plaintiff would not have had to suffer so much pain. Dr. Luu explained that she would then perform the procedure recommended by Dr. Ely. She successfully performed the procedure and removed the lump. As of November 14, 2013, the lump had not grown back. However, Plaintiff's lip is severely scarred and he has numbness on that side of his lower lip. Due to the numbness, he often bites down on that side of the lip, causing him great pain. Plaintiff asked doctors about the numbness and frequent biting and was informed that it was due to the surgeries and he may or may not regain complete feeling to that portion of his lip.

Plaintiff seeks compensatory damages in the amount of fifty thousand dollars ($50,000), and punitive damages in the amount of fifty thousand dollars ($50,000) from Defendant Briggs for Plaintiff's pain and suffering.

## C. DISCUSSION

### 1. Medical Treatment

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1151-52 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), *overruled in part on other grounds*, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

Like Plaintiff's initial complaint, Plaintiff's allegations in his amended complaint do not demonstrate that Defendant Briggs acted with the requisite state of mind.  Plaintiff does not deny that he sought and received medical care from Defendant Briggs.  Plaintiff was examined by Defendant Briggs who advised Plaintiff that he could remove the lump in his lip.  Defendant explained the procedure and Plaintiff agreed to have the procedure performed.  The medical treatment Plaintiff received from Defendant Briggs proved unsuccessful and caused Plaintiff pain, but Plaintiff's allegations do not demonstrate that Defendant Briggs acted with deliberate indifference to his medical needs.  At most, Plaintiff's allegations amount to negligence.  An Eighth Amendment claim may not be premised on an ordinary lack of due care, or even gross negligence, by a physician.  Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff claims Defendant Briggs should have followed the treatment plan recommended by Dr. Ely.  However, "[a] difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference."  Snow, 681 F.3d at 987 (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), *overruled in part on other grounds*, Peralta, 744 F.3d at 1082-83; Wilhelm, 680 F.3d at 1122-23

7

(citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).

Plaintiff has therefore failed to state a deliberate indifference claim against Defendant Briggs.

### 2. Medical Negligence

"To establish a medical malpractice claim, the plaintiff must allege in the complaint: (1) defendant's legal duty of care toward plaintiff; (2) defendant's breach of that duty; (3) injury to plaintiff as a result of that breach - proximate or legal cause; and (4) damage to plaintiff." Rightley v. Alexander, No. C-94-20720 RMW, 1995 WL 437710, at *3 (N.D. Cal. July 13, 1995) (citing to Hoyem v. Manhattan Beach School Dist., 22 Cal.3d 508, 514 (1978)); 6 B. E. Witkin, Summary of California Law, Torts § 732 (9th ed. 1988). "[M]edical personnel are held in both diagnosis and treatment to the degree of knowledge and skill ordinarily possessed and exercised by members of their profession in similar circumstances." Hutchinson v. United States, 838 F.2d 390, 392-93 (9th Cir. 1988) (internal citations omitted).

While the elements of a medical malpractice claim may be present in Plaintiff's complaint, the Court is without jurisdiction to entertain the claim. Pursuant to 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III," except as provided in subsections (b) and (c). However, if Plaintiff fails to state a cognizable federal claim, the Court will not exercise supplemental jurisdiction over his state law claim. 28 U.S.C. § 1367(c)(3); Parra v. PacifiCare of Az., Inc., 715 F.3d 1146, 1156 (9th Cir. 2013); Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 805 (9th Cir. 2001). Since Plaintiff fails to state a cognizable federal claim, his state law medical malpractice claim must be dismissed.

## D. CONCLUSION AND ORDER

Plaintiff's first amended complaint fails to state a claim upon which relief may be granted under section 1983. The Court previously provided Plaintiff with an opportunity to amend and based on the nature of the deficiencies at issue, further leave to amend would be futile. Akhtar v. Mesa, 698 F.3d 1202, 1212-13 (9th Cir. 2012); Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

Accordingly, this action is HEREBY DISMISSED, with prejudice, for failure to state a claim

upon which relief may be granted under section 1983, and the Clerk of the Court shall enter judgment.

IT IS SO ORDERED.

    Dated: __**October 5, 2015**__             /s/ *Dennis L. Beck*
                                                                 UNITED STATES MAGISTRATE JUDGE